THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-18-806-R |
| BOOT SCOOTERS, LLC, ET AL., | ) ) ) | |
| Defendants. | ) | |

# ORDER

Plaintiff filed this declaratory judgment action seeking a determination regarding the extent of its obligation to defend and indemnify Defendant Boot Scooters LLC and Defendants Carl Vick and Winston Tedrick, bouncers who worked at Scooters, the bar operated by Boot Scooters, in claims pressed by Charles McLaughlin. Before the Court is the Motion for Summary Judgment (Doc.No. 21) filed by Plaintiff Mesa Underwriters Specialty Insurance ("MESA"). Defendants Boot Scooters, Vick, and Tedrick filed a response as did the state-court plaintiff, Charles McLaughlin. (Doc. Nos. 23 and 26). The Court conducted a hearing on the motion on September 26, 2019. Upon consideration of the parties' submissions and arguments, the Court finds as follows.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than

merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

Charles McLaughlin filed suit in the District Court of Jackson County, Oklahoma, against Boot Scooters, Vick, and Tedrick alleging he was injured as a result of actions taken by the individuals in removing him from the bar on August 6, 2017. Mr. McLaughlin and his girlfriend were customers early that morning when they started arguing, which brought them to the attention of patrons and the bouncer Vick. McLaughlin was poking his girlfriend's chest and forehead as they appeared to be arguing.[1] When Defendant Tedrick approached McLaughlin's girlfriend she was crying and indicated he had some of her belongings, including her wallet and phone and would not return them.[2] Tedrick approached McLaughlin and asked for the items, McLaughlin responded that he was leaving and took a swing at Tedrick. When Tedrick leaned back out of the way, Vick grabbed McLaughlin from behind, grabbing underneath his arms. His arms disabled by Vick, Charles McLaughlin started kicking at Mr. Tedrick, who in response grabbed Charles McLaughlin's legs.[3] The men proceeded to carry McLaughlin across the bar. When Vick used his body to open the door to exit, McLaughlin kicked Tedrick "in the side again and did the alligator roll, and that's when he came out and landed on the ground." (Doc.No. 21-

---

[1] Charles McLaughlin testified that he was arguing with Haley Bryce, his girlfriend, but did not recall poking her chest.
[2] Charles McLaughlin does not recall being asked by Ms. Bryce to return her items and refusing to do so.
[3] Charles McLaughlin does not argue that it was inappropriate for Vick and Tedrick to escort him from the bar.

2

2, p. 53).[4] He suffered a subdural hematoma and bleeding in the brain. Mr. McLaughlin testified about his limited memories from the night in question, specifically he has no recollection of his interactions with Boot Scooters employees.

In the initial state-court petition, McLaughlin alleged that Vick and Tedrick wrongfully detained or falsely imprisoned him when they picked him up and carried him outside the bar. He further alleged that Defendants Vick and Tedrick acted maliciously and with reckless disregard for his rights when they threw him down on the sidewalk. McLaughlin subsequently amended his state-court petition, substantially modifying his allegations. Rather than alleging any intentional torts by Defendants Vick and Tedrick, he alleged both men acted negligently while performing their duties as bouncers, omitting any intentional torts. At the time of McLaughlin's injuries, Boot Scooters was covered by a commercial insurance policy issued by MESA; Plaintiff is defending Boot Scooters and its employees under a reservation of rights. MESA now seeks a declaration that its obligation is limited to $25,000 to Boot Scooters, inclusive of defense costs, and that it does not owe either employee a defense or indemnification for any judgment that might ensue.

The parties do not address what law applies in this diversity action, and the Court finds no basis in the record for concluding that any law other than Oklahoma law is relevant. *See, e.g., Universal Underwriters, Ins. Co. v. Winton*, 818 F.3d 1103, 1105-06 (10th Cir. 2016). An insurance policy is a contract to which general principles of

---

[4] Charles McLaughlin argues that there is evidence he was dropped because he was squirming, citing to his own deposition testimony. That testimony, however, is not based on Charles McLaughlin's personal knowledge, but rather on inadmissible double hearsay, statements allegedly made by a woman named Lauren to Haley Bryce, which Haley Bryce communicated to Charles McLaughlin. (Doc.No. 26-1, pp. 52-53).

contractual interpretation apply. Under Oklahoma law, "[w]hen policy provisions are clear, consistent, and unambiguous, [the court must] look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent." *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014). "[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991)(footnote omitted). Generally, the insured has the burden of showing the occurrence of a covered loss and the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy. *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (Once coverage is established, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."); An exclusion is a policy term eliminating coverage where it otherwise would have existed under the general declaration. *Dodson,* 812 P.2d at 377.

The parties do not argue that the general provisions of the Policy are inapplicable, Plaintiff contends, however, that the general provisions are modified by an Assault and Battery exclusion as well as an Endorsement providing for Limited Assault and Battery Coverage. Plaintiff argues that as a result of the Exclusion and Endorsement, that coverage under the Policy for the August 6, 2017 incident is limited to $25,000 rather than the $1,000,000 of coverage otherwise available under the Policy without consideration of these two provisions.

MESA seeks relief from continuing to defend Boot Scooters and its employees.

4

Under Oklahoma law, "[a] liability insurance policy generally contains two basic duties – the duty to defend and the duty to indemnify[.]" *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302-303 (Okla. 1996). The duty to defend is broader than the duty to indemnify and is not limited by "determinable contingencies" or the "outcome of the third-party action." *Id*. at 303–04. Rather, under Oklahoma law, "[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise *to the potential of liability* under the policy." *Id.* at 303 (emphasis in original) (internal footnote omitted). An insurer's duty to defend is determined on the basis of the allegations of the petition (and other pleadings), as well as information obtained from the insured and other sources reasonably available to the insurer. *Id*. Thus, under Oklahoma law, "[t]he duty to defend cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible*." *Id.* at 303 n.15 (emphasis in original). *See also Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 812 (10th Cir. 2008) ("Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists.").

Before considering the specifics of the Exclusion and Endorsement, the Court may quickly dispense with Plaintiff's first contention. Plaintiff MESA contends that the language of Charles McLaughlin's initial petition filed in the District Court of Jackson County dictates the outcome herein; specifically arguing that the allegations of intentional conduct place this case squarely within the Limited Assault or Battery Coverage Endorsement. Plaintiff argues that the Endorsement limits coverage to Boot Scooters, Inc.

5

and precludes coverage to Defendants Vick and Tedrick. Plaintiff contends that the allegations in the initial petition are admissions that may be used against Defendants.[5] Defendants assert that, because Charles McLaughlin amended his Petition, his initial allegations are of no legal consequence; therefore, MESA cannot avoid defending or indemnifying Boot Scooters, Vick, and Tedrick in the underlying lawsuit.

The Court finds no basis in the law for adopting any of the parties' positions. As set forth above, Oklahoma is not a "four corners" state and the insurer was obligated, regardless of the allegations, to consider the facts, not merely the language of the state-court petitions. The parties' briefs operate under the assumption that the legal monikers assigned by the underlying plaintiff dictate the outcome of the declaratory judgment action. The terms "assault" and "battery" are defined within the Policy; those definitions apply and "it is irrelevant how [Charles McLaughlin may] have pled [his] claims in state court. Instead the Court must focus on the relevant language in the insurance policy." *James Rivers Ins. Co. v. Blue Ox Dance Hall, LLC*, No. 16-cv-0151-CVE-FHM, 2017 WL 2367052, * 5 (N.D. Okla. May 31, 2017); *see also First Bank of Turley,* 928 P.2d 298, 303 n. 13 ("The duty to defend should *focus upon the facts* rather than upon the complaint's allegations, which may or may not control the ultimate determination of liability.")(emphasis in original)(citing *Texaco, Inc. v. Hartford Acc. and* Indemnity, 453 F.Supp. 1109, 1113 (E.D.Okla. 1978)); *Hartford Cas. Ins. v. Merchants & Farmers Bank,* 928 So.2d 1006, 1012 (Ala. 2005)("it is the facts, not the legal phraseology, that determine

---

[5] Plaintiff cites no legal basis for asserting that Defendants Boot Scooters, Vick and Tedrick could be bound by any admissions by Charles McLaughlin in the original petition. The court notes that admissions of fact are distinguishable from allegations of law.

whether an insurer has a duty to defend its insured in the action.") Thus, the Court finds that Plaintiff's first argument in support of summary judgment provides no basis for limiting or excluding coverage to Boot Scooters, Vick and Tedrick.

The Policy provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . .

***

This insurance applies to "bodily injury" and "property damage" only if:
  (1) The "bodily injury" or "property damage" is caused by an "occurrence" . . .

(Doc. No. 23-5, p. 38). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* p. 52). The Policy further provides "we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. (Doc.No. 23-5, p. 38). The Policy contains two modifications, an Assault or Battery Exclusion and an endorsement entitled Limited Assault or Battery Coverage.

The Assault or Battery Exclusion excludes insurance coverage for "bodily injury" that is "caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from . . . (D) Negligent, reckless, or wanton conduct by you, your employees, patrons or any other persons. . . [or] (E) The use of force, whether excessive or not, to protect persons or property whether or not the 'bodily injury' . . . was intended from

7

the standpoint of the insured." (Doc. No. 23-5, p. 22).[6] The exclusion contains the following definitions:

> "Assault" means any intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any other threatened harmful or offensive contact between two or more persons.
>
> "Battery" means the intentional or reckless use of force including a physical altercation or dispute between persons, or offensive touching against another, resulting in injury whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of weapon.

(Doc.No. 23-5, p. 23). At the hearing, the Plaintiff argued that this provision excludes coverage for Charles McLaughlin's injuries, because there was an assault, that is, an intentional act by Charles McLaughlin, the kicking, which arose out of negligent or wanton conduct. The Court agrees with Plaintiff's position that the Exclusion removes coverage from the Policy for assault or battery under the facts alleged in the underlying action and established by the evidence submitted to the Court.

There is no dispute that Charles McLaughlin suffered bodily injury, a traumatic brain injury, for which he seeks to recover from Defendant Boot Scooters as well as Defendants Vick and Tedrick. The question is whether his traumatic brain injury was

---

[6] The Court construes these terms as reading from least to most broad, that is, caused by requires a closer nexus than arising out of, and each of the first three is less broad than "in any way related to."

> The general consensus, consistent with Oklahoma law, regarding the interpretation of "arising out of" is that the phrase should be "given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'—that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." *Fed. Ins. Co. v. Tri–State Ins. Co*., 157 F.3d 800, 804 (10th Cir.1998).

*State Farm Fire & Cas. Co. v. Pettigrew*, 180 F. Supp. 3d 925, 933 (N.D. Okla. 2016); *see also Coxcom, Inc. v. Egghead Telecom, Inc.*, 2009 WL 4016629, *5 (N.D. Okla. September. 11, 2009)(use of the terms "arising out of" and "in any way related to" indicated that arbitration clause should be read broadly).

caused by, arose out of, resulted from, or was in any way related to an assault or battery as defined by the Policy. The undisputed evidence is that as Vick and Tedrick were carrying Charles McLaughlin out of Scooters, McLaughlin repeatedly kicked Tedrick, making contact with Tedrick's stomach and side. The kicks constitute an "assault" under the Policy, that is an intentional act or attempted act designed to inflict injury. The assault must in turn have been caused by, arisen out of, or resulted from, in whole or part, one of the enumerated provisions in the Exclusion. Plaintiff contends that the assault arose out of the negligent, reckless or wanton conduct of Mr. McLaughlin, and the Court agrees.

The undisputed evidence is that the bouncers, Defendants Vick and Tedrick, observed Mr. McLaughlin arguing with his girlfriend Haley Bruce, behavior brought to their attention by an unidentified bar patron. Both Vick and Tedrick testified that Charles McLaughlin poked his girlfriend on the chest and forehead and refused to return her identification and cell phone and indicated he was leaving with her possessions but without her. As a patron, Charles McLaughlin's behavior prior to being removed by the bouncers falls within subsection I(D) of the Exclusion.[7] Alternatively, McLaughlin's kicks resulted from or arose out of the use of force by bouncers Vick and Tedrick to protect persons or property, addressed by subsection I(E) of the Exclusion.

---

[7] The Policy does not define negligent, reckless or wanton. Negligence is generally understood as failing to exercise the care expected of a reasonably prudent person under the same circumstances. Merriam-Webster.com defines "reckless" as "marked by lack of proper caution: careless of consequences" and "wanton" as "having no just foundation or provocation." Mr. McLaughlin's actions toward his girlfriend on the evening in question were both reckless and wanton.

9

Defendants argue in part that the Policy provisions at play are clearly intended to apply to victims asserting they were assaulted or battered but, that if the provision can be read as asserted by Plaintiff, it is ambiguous and therefore must be construed consistent with Boot Scooters' reasonable expectations, which would provide coverage. Although the typical scenario would be one patron seeking relief for injuries inflicted directly either by staff members of Boot Scooters or by another patron, nothing in the unambiguous language of the Policy precludes a finding that Charles McLaughlin, kicking Tedrick and causing Defendants Vick and Tedrick to drop him falls outside the Exclusion.[8] The Court disagrees with Defendants' position and finds that the unambiguous provisions of the Exclusion set forth above apply.

With regard to the Endorsement, Plaintiff's motion in essence concedes the applicability thereof by seeking a determination that coverage is limited to $25,000.00. Accordingly, the Court need not address the argument by Plaintiff that coverage is so limited. To the extent Plaintiff argues that the Limited Assault or Battery Coverage excludes coverage for Vick and Tedrick, specifically that the coverage "does not apply to any 'named party' who has or is alleged to have committed or participated in or directed 'assault' or 'battery.'" (Doc. No. 23-5, p. 28). Plaintiff does not identify facts to indicate that Boot Scooters' employees "participated in or directed" any assault or battery such that

---

[8] In *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's Inc.*, 582 F.Supp. 865 (E.D. Pa. 1984), the court considered an assault and battery endorsement in a declaratory judgment action involving a fight outside of a tavern. The tavern owner offered an alternative factual scenario in an effort to avoid the exclusion, asserting that perhaps the lethal injuries sustained by the "victim" resulted from the "victim" instigating a fight and brandishing a weapon but succumbing to injuries inflicted by another person acting in self-defense. The tavern argued that, under this situation, there would be no liability for assault and battery, only for negligence in supervising its parking lot. The court disagreed, noting that the victim's injuries would "still [arise] from an assault and battery, albeit his own. The controverted exclusion applies to an assault and battery committed by 'any person.'" *Id.* at 868.

they would not be entitled to a defense under the Endorsement; accordingly, the Court's decision is not premised on this argument.

Plaintiff's motion also requested a determination that the $25,000 coverage is an eroding limit, premised on language in the endorsement:

> C. Our duty to defend any "occurrence" or "suit" or to pay any settlement or judgment, or defense cost under this endorsement ends after our applicable limits of insurance have been exhausted by payment of damages, defense costs and/or Supplementary Payments.

(Doc.No. 23-5, p. 28). Defendants do not respond to Plaintiff's contention, and therefore, the Court concludes they concur with Plaintiff's representation and do not dispute that once MESA has expended $25,000 via payment of damages or defense costs, its obligation to defendant Boot Scooters and its employees ceases.

Plaintiff MESA's Motion for Summary Judgment is hereby GRANTED. In light of granting of dispositive motion, Motion to Bifurcate (Doc.No. 22) is DENIED AS MOOT.

IT IS SO ORDERED this 4th day of October 2019.

_____
**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**